✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

3:09 pm, May 01 2024

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Michael C. Hanlon
Assistant United States Attorney

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4895
MAIN: 410-209-4800
FAX: 410-962-9293
Michael.Hanlon@usdoj.gov

February 26, 2024

Julie Reamy, Esquire

    Re:    United States v. Devin Gray
           Crim. No. JRR-23-0342

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to your client, Devin Gray ("the Defendant") by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer is not accepted by March 10, 2024, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to waive indictment and plead guilty to a Superseding Information that will charge him with Unlawful Possession of a Machinegun, in violation of 18 U.S.C. § 922(o). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### Count One

    That on or about the time alleged in the Superseding Information, in the District of Maryland,

    First, that the defendant possessed a firearm as described in the Superseding Information;

    Second, that the firearm the defendant possessed was a machinegun, as defined at 18 U.S.C. § 921;

1

Third, that the defendant acted knowingly; and

Fourth, that the defendant was not authorized to possess the machinegun described in the Superseding Information.

## **Penalties**

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. §922(o) | None | 10 years | 3 years | $250,000 | $100 |

a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant

agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization.  The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status.  The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty.  The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences

### Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in **Attachment A**, which is incorporated by reference herein.

a.      This Office and the Defendant agree that the guidelines should be calculated as follows:

The parties agree that the combined offense level will be based on all of the offense conduct combined in the stipulation and any information provided by either party related to the counts of the Superseding Information and/or Indictment, including counts that are being dismissed under this plea agreement.

The agreed base offense level will be determined under U.S.S.G. §2K2.1(a) (including on factors such as the Defendant's criminal record and the fact that the offense involves a firearm as defined at 26 U.S.C. § 5845(a)) (U.S.S.G. §2K2.1(a)). The offense level is increased by 2 levels because the offense conduct involved 3 firearms (U.S.S.G. §2K2.1(b)(1)).

In the event that the U.S. Sentencing Guidelines manual effective November 1, 2023 is found to apply to this case, the government reserves the right to argue that the offense level should be increased by 4 levels (under U.S.S.G. § 2K2.1(b)(4)) on the grounds that the firearm was not properly marked with a serial number and by 2 levels (under U.S.S.G. § 2K2.1(b)(5)(B)) on the ground that the Defendant's conveyance of a firearm satisfied the requirements of that section. The Defendant reserves the right to oppose any such adjustments.

In the event that the U.S. Sentencing Guidelines Manual effective at the time of the offense is found to apply to this case, the government reserves the right to seek an increase of 4 levels on the grounds that the offense involved the trafficking of firearms (under former U.S.S.G. §2K2.1(b)(5)). The Defendant reserves the right to oppose any such adjustments.

       b.     This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. In the event that the base offense level is 16 or greater, this Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level decrease** in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

       7.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level.

### Rule 11(c)(1)(C) Plea

       8.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a **sentence of no less than 84 months' (7 years') and no more than 120 months' (10 years') imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine, or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that, if the Court finds that the Defendant engaged in obstructive or

unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

9.    At the time of sentencing, each party may recommend and advocate for any sentence of imprisonment within the range agreed to in paragraph 8. The parties may advocate for any period of supervised release and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Information and/or Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: The Defendant reserves the right to appeal the sentence of imprisonment if the term of imprisonment exceeds 120 months.

c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable

6

to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any items that constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

13.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14.    The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15.    The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

16.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including

statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

18.    The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing, signed by all parties, and approved by the Court.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

By: _____

Michael C. Hanlon
Assistant United States Attorney

8

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-14-24
Date

Devin Gray

I am the Defendant's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with the Defendant. The Defendant advises me that he understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3/14/24
Date

Julie Reamy, Esquire

9

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On the dates described below, federal law enforcement officers with the Bureau of Alcohol, Tobacco, Firearms, and Explosives conducted controlled purchases of firearms, ammunition, and other items from the Defendant, Devin Gray. ATF made the controlled purchases through the assistance of a cooperating informant, referred to herein as CI-1.

### April 5, 2023 Controlled Purchase of Polymer 80 Firearm and Ammunition (as well as Fentanyl)

During the week of April 2, 2023, Gray and CI-1 engaged in communications through Gray's phone at the time (the "9228 phone"). Gray sent a photo from the 9228 phone of a firearm for sale. The photo depicted a tan firearm with "Polymer80 INC" marked on the side. The picture also showed a gray object protruding from the slide back plate. ATF recognized the device as a firearm "switch" (that is, a conversation device that when installed would allow a semi-automatic firearm to operate as an automatic firearm).

On April 5, 2023, ATF used CI-1 conducted the controlled purchase of a firearm and suspected fentanyl discussed during the aforementioned text messages. CI-1 was provided with $3150 in ATF funds for the operation (and was found to be free of contraband before and after the operation). CI-1 travelled to a location in Baltimore City, Maryland where they met with Gray in Gray's van. Gray and CI-1 engaged in a conversation, which was recorded on a recording device on CI-1's person. Gray conveyed a firearm and ammunition to CI-1. During the conversation Gray referred to the firearm having ammunition and stated that his (Gray's) own firearm did not have a "switch." Gray referred to the fact that the firearm would function automatically by making sounds consistent with imitating a machine gun. CI-1 went back to their car briefly, acquired money for the purchase, and then returned to Gray's van.

During the encounter, Gray and CI-1 also awaited the arrival of another person who was supposed to provide narcotics to Gray to provide to CI-1. Gray stated that the other person would be coming with the "down," which is a term used to describe fentanyl. Gray also referred to being able to acquire something "good" nearby and referred to that as good "cane," which investigators known to be a term used to refer to cocaine. Gray told CI-1 that Gray would be able to "get you everything you need." At one point, CI-1 asked about the "safety" on the firearm, and Gray replied there was no "safety on that."

After waiting for some time, the two agreed that CI-1 would go to a nearby store to get drinks for them both. CI-1 did so and remained in contact with law enforcement while he did.

When CI-1 returned to the original location where they met Gray, Gray approached CI-1's car and provided CI-1 with a quantity of fentanyl (later confirmed by lab analysis).

Gray met with law enforcement later and provided them with the items listed below, all of which CI-1 acquired from Gray:

- One Polymer 80 firearm without a serial number. The weapon was examined by ATF and was confirmed to be a functional fully automatic "machinegun," that is a firearm that would fire more than one round by a single press of the trigger. The weapon was loaded with 7 rounds of 9mm ammunition. The firearm provided by CI-1 to law enforcement, which the CI-1 had obtained from Gray, was identical to the firearm in the photo that Gray had sent by cell phone to CI-1 before the controlled buy. As discussed below, the firearm and the ammunition satisfied the definitions of those terms as used in 18 U.S.C. § 921.

- 25 gel caps of fentanyl. The substance was lab-tested and confirmed to be fentanyl.

**April 27, 2023 Controlled Purchase of Firearm and Ammunition**

During the week of April 22, 2023, Gray and CI-1 engaged in communications about Gray selling a firearm to CI-1. The communications included Gray sending a photo of the firearm from his cell phone at the time (the "4122 phone"). The photo showed a black Mossberg model MC1SC handgun.

CI-1 and Gray arranged to meet on April 27, 2023. CI-1 arrived and got into Gray's Kia as before. Conversation inside the van was recorded by a recording device on CI-1 person. During the conversation, Gray showed and conveyed a firearm to CI-1 and showed the safety to CI-1 and stated "[t]his the safety right here." Gray talked about being able to sell guns to people in West Virginia who want guns and are willing to spend money on them.

CI-1 left Gray and met with law enforcement. CI-1 conveyed to law enforcement the firearm that CI-1 had acquired from Gray. The firearm was a Mossberg model MC1SC 9mm caliber handgun (serial number 047440CP). The weapon was loaded with 10 rounds of 9mm ammunition. As discussed below, the firearm and ammunition satisfied the definitions of "firearm" and "ammunition" found in 18 U.S.C. § 921.

**May 16, 2023 Controlled Purchase of Firearm**

The ATF conducted another controlled purchase of a firearm from Gray on May 16, 2023 at a different location from the one on the two aforementioned dates. Gray and CS-1 met and traveled together to meet a third party. Gray arranged for CI-1 to obtain the firearm from the third party. The firearm was another Polymer private-made weapon and was not loaded.

The Defendant agrees and stipulates that he knowingly possessed the firearms and ammunition described above. The Defendant stipulates and agrees that he knew that the firearm me conveyed on April 5, 2023 (as described herein) was a functional machinegun that would fire more than one shot by a single press of the triggers. The firearms described above were firearms" under 18 U.S.C. § 921 because they were weapons capable of expelling a projectile by the action of an explosive. The Polymer 80 firearm purchased on April 5, 2023 satisfied the definition of a "machinegun" under 26 U.S.C. § 4845 and 18 U.S.C. § 921 because it was capable of firing more than one shot by a single press of the trigger due to the presence of the "switch" conversion device in the weapon (the conversation device, were it removed from the Polymer 80, would separately constitute a firearm and a machinegun because it constituted a part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun). The ammunition described above was "ammunition" designed for use in a firearm and satisfied the definition of "ammunition" in 18 U.S.C. § 921.

The Defendant was not legally authorized to possess a machinegun at anytime during the dates at issue in this case, including on April 5, 2023 and has never been legally authorized to possess a machinegun.

The Mossberg firearm and all of the ammunition mentioned above were manufactured outside of Maryland and therefore traveled in interstate commerce prior to the events in this case.

Prior to the events described herein, the defendant had been convicted of a crime punishable by a term of imprisonment exceeding one year, the defendant was aware of that fact prior to and at the time of the events described herein, and his civil rights had not been restored.

All the above-described events took place in the District of Maryland.

SO STIPULATED:

_____
Michael C. Hanlon
Assistant United States Attorney

James Hammond
Special Assistant United States Attorney

_____
Devin Gray
Defendant

_____
Julie Reamy, Esquire

12